UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE KOLLEY, et al.,

        Plaintiffs,

                                          Case No. 09-CV-10919

vs.                                  HON. GEORGE CARAM STEEH

ADULT PROTECTION SERVICES,
an agency of the State of Michigan, et al.,

        Defendants.

_____/

ORDER DENYING DEFENDANT NEPH'S MOTION TO STRIKE (# 28),
GRANTING DEFENDANT NEPH'S MOTION TO DISMISS PURSUANT TO
THE YOUNGER DOCTRINE (# 5), DISMISSING WITHOUT PREJUDICE PLAINTIFFS'
FEDERAL CLAIMS AS ALLEGED AGAINST ALL DEFENDANTS PURSUANT
TO THE YOUNGER DOCTRINE,
DISMISSING PLAINTIFFS' STATE LAW CLAIMS ON DECLINING TO
EXERCISE SUPPLEMENTAL JURISDICTION, AND
DENYING AS MOOT DEFENDANT SALTZMAN'S MOTION TO DISMISS (# 18),
THE MORC DEFENDANTS' MOTION TO DISMISS (# 34), AND
DEFENDANTS DHS'S AND FINCHER'S MOTION TO DISMISS (# 35)

       Defendant John Neph moves to dismiss the several plaintiffs' federal claims of violation of a First Amendment right of family association and unity, denial of due process, violations of the First and Fourteenth Amendments premised on the alleged vagueness and overbreadth of M.C.L. §§ 400.11a through 400.11c, discrimination based on Arabic ethnicity, and state law claims of gross negligence, negligence, battery, defamation, false imprisonment, abuse of process, intentional infliction of emotional distress, and medical malpractice. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral

argument.

## I. Background

Plaintiffs filed a complaint on March 11, 2009 alleging that plaintiffs Suzanne Kolley and Joseph Kolley are the biological parents of plaintiff Jena Kolley, a mentally impaired individual, that plaintiff George Brown is Suzanne's current husband and Jena's step-father, and that plaintiffs William Kolley and Joseph Kolley, Jr. are Jena's siblings. The complaint refers to the six plaintiffs as the "Kolley Family." The named defendants include: the Michigan Department of Human Services ("DHS"), Michigan Adult Protective Services ("APS") and APS agent Marcie Fincher; the Macomb Oakland County Regional Center for the Handicapped ("MORC"), MORC agents Edward Keefer, Lori Mathes, Susan Thomas, and Lea Antella; Oakland County Sheriff's Detective John Neph; Hazel House, a group home; Hazel House Manager Pricilla Murell and Hazel House employee Pat Holmes; Jena's guardian ad litem ("GAL") Shirley Saltzman; and forensic evaluator Tirica Schuster.

Plaintiffs allege that Jena is a severely mentally disabled nineteen-year-old woman that suffers from Oral Facial Digital Syndrome, characterized by physical defects of the mouth, tongue, teeth, and jaw. Jena also has developmentally physical defects of the face, head, eyes, nose, fingers, and toes. Jena's social and communication skills are likewise significantly impaired. Jena's communication skills are allegedly that of a 5 to 7 year-old child, and her social skills are that of a 4 to 8 year-old child. Plaintiffs allege:

> . . . . For example, when given a verbal prompt, Jena will use a 2 word utterance 80% of the time. Reports on Jena's condition also include that she does not communicate well with people she is uncomfortable with, or when in uncomfortable situations. Furthermore, Jena is often misunderstood and lacks the ability to correct the listener when the intent of her message is incorrectly interpreted. That is, when faced with a question Jena often simply answers "yes."

Complaint, ¶ 20, at 4-5. Jena attended Rochester Public Schools in her early years. In October 2008, as a late-teen, Jena began attending "Wings," a school for mentally impaired children.

On November 12, 2008, Detective Neph allegedly informed Suzanne Kolley that Jena's teacher was reporting that Jena told her on October 29, 2008 and November 6, 2008 that "mama hit me." When Suzanne Kolley arrived at school with Jena on November 14, 2008, Wings Police Liaison Stephanie Nelson, Detective Neph, APS's Fincher and an unknown APS employee[1] told Suzanne that Jena was going to be questioned for a few hours, after which Jena could return home. Jena allegedly began to cry and cling to her mother. Suzanne allegedly showed Nelson that Jena did not have any bruises on her back, but the group allegedly "persisted in taking the hysterically upset girl away from her mother to be questioned." Complaint, ¶ 25, at 5-6.

APS's Fincher, Oakland County Assistant Prosecutor Derek Meinecke, MORC's Keefer, Mathes and Thomas, Detective Neph, and forensic evaluator Schuster were each allegedly present when Jena was interviewed outside the presence of Suzanne Kolley. Plaintiffs allege these defendants asked Jena invasive and leading questions, took advantage of her incompetency, and convinced Jena to make allegations against her mother Suzanne. After the interview, Jena was permitted to return home with her mother.

Plaintiffs allege that, based solely on the statements made by Jena at the interview, an ex parte petition was filed to terminate Suzanne's guardianship over Jena. Joseph Kolley was allegedly not notified of the petition. Plaintiffs allege that:

---

[1] Plaintiffs allege that "defendant Jeri Wyson" was part of the group that confronted Suzanne Kolley. Wyson is not listed in the caption nor that part of the Complaint identifying "The Parties." See Complaint, at 2-3; ¶ 25, at 5.

> Normally during the probate process a random Guardian is assigned to the ward's case.  In the present case, MORC and APS "nominated" Thomas Brennan Fraser.

Complaint, ¶ 33, at 6.  Detective Neph allegedly informed the Kolley Family on November 14, 2008 that Jena was going to be removed from the home.  Allegedly, within hours, MORC's agent defendant Susan Giperich[2] appeared at Jena's home with two Oakland County officers.  Suzanne and her husband Brown allegedly informed Giperich of Jena's strict need for dental and oral hygiene care.

The Kolley Family was allegedly left unaware of Jena's whereabouts for several days, until notified on November 18, 2008 that the Oakland County Probate Court had appointed a temporary guardian in place of Suzanne.  Jena was allegedly transported to St. John Providence Hospital in Southfield, Michigan, by Detective Neph and Hazel House's Holmes on November 18, 2008, where rape examinations were performed on Jena notwithstanding the absence of any rape allegations.  Jena was not competent to sign the consent form, and Jena's temporary guardian allegedly did not sign the form.  A November 18, 2008 Providence Hospital Report allegedly indicated no evidence of rape, abuse, or bruising.  Plaintiffs allege that, as a form of harassment, APS's Fincher, accompanied by two Oakland County Officers, arrived at Suzanne's home on December 4, 2008 to interrogate her thirty-five year-old mentally handicapped son, Joe Kolley, Jr..

Jena's biological father Joseph Kolley was allegedly appointed by the Probate Court as a co-guardian on December 23, 2008, with rights of visitation.  Plaintiffs allege that

---

[2] Giperich is listed in the caption as a defendant, but is not set forth in that part of the Complaint identifying "The Parties."  See Complaint, at 2-3; ¶ 25, at 5.

4

Joseph had the right to be appointed full guardian as Jena's biological father.

The Kelly Family was allegedly not permitted to visit Jena at Hazel House from November 18, 2008  to December 26, 2008.  Phone calls were allegedly cut off by Hazel House employees because Jena would cry for hours after the calls to see her family and go home.  Joseph Kolley was allegedly the first to visit Jena at Hazel House on December 26, 2008, and observed that Jena "had lost weight and appeared disheveled and dirty." Complaint, ¶ 42, at 8.  Joseph Kolley also allegedly observed that hair was growing out of Jena's face and legs, and that her dental requirements were not being met.   Joseph allegedly complained about Jena's condition, and made her dental health requirements clear before leaving Hazel House.  Joseph allegedly repeated his complaints to Jena's co-GAL on December 27, 2008.

On January 23, 2009, Michigan APS defendant Fincher petitioned the Probate Court to be appointed Joe Kolley, Jr.'s GAL, allegedly knowing that Joseph Kolley had been appointed as Joe's guardian on January 14, 2009.  Plaintiffs allege that, at a January 28, 2009 Probate Court hearing, Hazel House Manager Murell, Michigan APS agent Fincher, GAL Saltzman, and the MORC defendants conspired and offered false testimony that Jena's father Joseph and brother William "made sexual connotations towards [Jena] and requested that Hazel House give [Jena] a 'bikini wax' or otherwise shave her pubic hair." Complaint, ¶ 45, at 9.  Plaintiffs allege that, after the hearing, William Kolley asked "how do you people sleep at night," causing Murell to tell Jena "something to the effect of, 'if you don't stop crying you will never see your family again.'" Id., ¶ 46, at 9.  Plaintiffs allege that Joseph and William Kolley were denied access to Hazel House on January 28, 2009, which caused Jena to begin crying for them.

5

On January 29, 2009, the Probate Court granted an emergency motion to terminate the Kolley Family's visitation rights.  Plaintiffs allege that the motion was "based on the outlandish allegation that on January 28, 2008 [sic, 2009] William Kolley and Joseph Kolley threatened MORC and Hazel House employees at Oakland County Circuit Court and again at Hazel House."  Complaint, ¶ 48, at 9-10.  Plaintiffs allege that, with the termination of Joseph Kolley's rights, no one from the Kolley Family is able to visit or call Jena.

### A. Federal Claims

Count I alleges that each of the defendants violated the plaintiffs' fundamental First Amendment right to associate as a family by removing Jena  from her home on November 14, 2008.  Count II alleges that the Michigan DHS, Michigan APS, APS's Fincher, the MORC defendants, and Detective Neph violated Suzanne Kolley's, Joseph Kolley's, and George Brown's rights not to be deprived of their parental liberty interests without procedural and substantive due process of law.  Count III alleges that the Michigan DHS and Michigan APS violated the plaintiffs' First and Fourteenth Amendment rights by acting pursuant to the Social Welfare Act of Michigan, M.C.L. §§ 400.11a through 400.11c[3], because the statute is constitutionally overbroad and void for vagueness, and thus impinges upon the fundamental rights of familial unity and association.  Count IV alleges that all of the defendants are liable under 42 U.S.C. § 1983 for discrimination because the

---

[3]     Plaintiffs refer alternatively in their complaint to M.C.L. § 400.111a, b, and c, M.C.L. § 400.111(a), (b), and (c), and M.C.L. § 400.11(a), (b), and (c).  In the context of this lawsuit, as set forth infra, the court presumes the plaintiffs are referring to M.C.L. § 400.111a, M.C.L. § 400.111b, and M.C.L. § 400.111c.  See Complaint, at 22, seeking a declaration that "MCL 400.11(a), (b), and (c) are unconstitutional."  M.C.L. § 400.11 is a definitional section, with M.C.L. § 400.11(a) defining "Abuse," M.C.L. § 400.11(b) defining "Adult in need of protective services" or "adult," and M.C.L. § 400.11(c) defining "Exploitation."

defendants were motivated by the plaintiffs' Arabic ethnicity.

## B. State Law Claims

Count V alleges gross negligence against APS and Fincher for violations of a DHS Adult Service Manual and M.C.L. § 400.11b.  Count VI alleges negligence against the MORC and MORC defendants.  Count VII alleges battery against Detective Neph and Hazel House employee Holmes for escorting Jena to Providence Hospital on November 18, 2008 to undergo a rape examination.  Count VIII alleges defamation against Hazel House Manager Murell, GAL Saltzman, and a yet to be identified Hazel House employee for publishing false statements to the Probate Court on January 28, 2009 indicating that Joseph Kolley had engaged in illegal sexual conduct with his daughter Jena.  Count IX alleges false imprisonment against all defendants for the November 14, 2009 involuntary removal of Jena from her home.  Count X alleges abuse of process against the Michigan DHS, APS, Fincher, MORC, the MORC defendants, Detective Neph, the Hazel House defendants, and GAL Saltzman.  Count XI alleges intentional infliction of emotional distress against all defendants.  Count XII alleges medical malpractice against Hazel House.

## C. Relief Requested

Plaintiffs seek a court order declaring that M.C.L. §§ 400.11a through 400.11c is unconstitutional.  Plaintiffs also seek an award of $15.0 million in compensatory and exemplary damages.

## II. Neph's Motion to Strike

Neph moves to strike plaintiffs' response to Neph's reply brief arguing a response to a reply brief is not authorized under the Federal Rules of Civil Procedure nor the Local Rules for the Eastern District of Michigan.  Local Rule 7.1(c)(1)(A) requires the filing of

7

motion and response briefs, and permits the filing of a reply brief.  Local Rule 7.1(e) authorizes the court to enter an ex parte order permitting a party to file additional briefs. The court construes plaintiffs' three-page response to Neph's reply brief as an additional brief authorized under Local Rule 7.1(e), noting that the brief essentially reiterates plaintiffs' position as set forth in plaintiffs' response brief.  Neph's motion to strike will be denied.

### III. Motion to Dismiss

Neph moves to dismiss arguing this court should abstain from exercising federal jurisdiction under the Younger[4] abstention doctrine because proceedings involving Jena remain pending in the state Oakland County Probate Court, and criminal proceedings remain pending against Suzanne Kolley in Oakland County Circuit Court.  Neph also moves to dismiss arguing this court lacks federal subject matter jurisdiction under the Rooker-Feldman doctrine.  Neph relies on matters outside the pleadings to support his position.

Neph's motion is a factual attack on the court's jurisdiction.  In analyzing the motion

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. Cir.), cert. denied, 513 U.S. 868 (1994)].  The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction.  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  The plaintiff bears the burden of demonstrating subject matter jurisdiction.  RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).

Ashley v. United States, 37 F.Supp.2d 1027, 1029 (W.D. Mich. 1997).  "Lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation. . . .  A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that

---

[4]   Younger v. Harris, 401 U.S. 37 (1971).

8

jurisdiction is lacking." Sweeton v. Brown, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting United States v. Siviglia, 686 F.2d 832, 835 (10th Cir. 1981), cert. denied, 461 U.S. 918 (1983)). "[A] defect in a federal court's original jurisdiction need not be asserted by any party, cannot be waived by any party, and must be raised by a Court sua sponte when noticed." Ku v. State of Tennessee, 322 F.3d 431, 433 (6th Cir. 2003) (citing Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381 (1998)).

### A. State Court Proceedings

Consistent with the plaintiffs' allegations, it is undisputed that guardian proceedings, In re Jena Kolley, Case No. 2008-320,120 DD, were pending in Oakland County Probate Court at the time plaintiffs filed their complaint on March 11, 2009. Defendant Neph's Exhibits B-L. Likewise, it is undisputed that state criminal charges of vulnerable adult abuse, M.C.L. § 750.145(n)(3), were pending against plaintiff Suzanne Kolley at the time of the filing of the complaint. Defendant Neph's Exhibit M. For abstention purposes, the initial frame of reference is at the time of the filing of the complaint. Zalman v. Armstrong, 802 F.2d 199, 203 (6th Cir. 1986).

APS's Fincher filed a petition for appointment as Jena's guardian on November 14, 2008. Defendant Neph's Exhibit B. Following a hearing, Probate Judge Arthur Moore entered a November 14, 2008 Order removing Jena from the family home for placement in a foster home, requiring participation in defendant MORC, and naming Thomas Fraser Jena's temporary guardian. Defendant Neph's Exhibit C. Following a second hearing, Judge Moore entered a December 18, 2008 Order appointing defendant Saltzman Jena's GAL. Defendant Neph's Exhibit D. Saltzman filed a "First Report of Guardian Ad Litem" with the Probate Court on or about December 13, 2008. Defendant Neph's Exhibit E. On

9

December 23, 2008, Judge Moore entered an Order that: (1) appointed Joseph Kolley as Jena's temporary co-guardian; (2) required "Jean shall not be removed from group home without consent of G.A.L."; and (3) an evaluation would be completed before a January 28, 2009 hearing to "determine whether [Jena] is in need of a guardian, who the guardian should be, and if current placement should be continued." Defendant Neph's Exhibit F. Defendant GAL Saltzman filed a "Report and Recommendations of Guardian Ad Litem" in Probate Court on January 26, 2009. Defendant Neph's Exhibit G. After a January 28, 2009 hearing, Judge Moore entered an Order: (1) adjourning the contested hearing to March 19, 2009; (2) continuing Jena's placement at defendant MORC; (3) permitting Jena's father to visit Jena at defendant Hazel House; (4) requiring MORC representative Sharon O'Bryan to testify regarding a psychological evaluation; (5) requiring an independent evaluation to be conducted "by Court Clinic of both Jena and Joseph Kolley; and (6) requiring the Court Clinic evaluator to testify at the March 19, 2009 hearing." Defendant Neph's Exhibit H. GAL Fraser filed a petition in the Probate Court on January 29, 2009 for a January 30, 2009 hearing for an order suspending or terminating Joseph Kolley's visitation rights, alleging:

> The co-guardian [Joseph Kolley] and other family members confronted [GAL Fraser], the MORC worker, the Home Manager, and this co-guardian with name calling and assaultive behavior following the hearing on 1-28-09. The co-guardian [Joseph Kolley] and his adult son verbally assaulted all non-family members following the hearing 0n 1-28-09. That evening the co-guardian [Joseph Kolley] and son continued this verbal assault at the Group Home and insisted on videotaping the Home and their [illegible].

Defendant Neph's Exhibit I. GAL Saltzman filed a "Supplemental Report and Recommendation" on January 30, 2009. Defendant Neph's Exhibit J. Probate Judge Moore entered an Order on January 30, 2009, ordering that: (1) "Family may not visit or

10

phone Jena Kolley until at March 19, 2009 hearing at 8:30 am"; and (2) "An independent evaluation of Joseph Kolley and Jena Kolley to be completed by the March 19, 2009 [sic] [hearing]."   Defendant Neph's Exhibit K.   GAL Saltzman filed an "Interim Report of Guardian Ad Litem" on February 9, 2009 recommending that Joseph and William Kolleys' visitation and telephone contacts with Jena be suspended.   Defendant Neph's Exhibit L. Plaintiff filed this federal lawsuit on March 11, 2009, eight days before the scheduled March 13, 2009 Probate Court hearing.

## B. Federal Question Jurisdiction

Federal subject matter jurisdiction is premised on federal question jurisdiction pursuant to 28 U.S.C. § 1331 over plaintiffs' federal claims that: each of the defendants violated the plaintiffs' First Amendment rights by removing Jena from the family home; that the Michigan DHS, APS, Fincher, the MORC defendants, and Detective Neph violated Jena's parents Suzanne Kolley's, Joseph Kolley's, and George Brown's constitutional rights by removing Jena from their homes and precluding telephone calls or visitation without due process of law; that the Michigan DHS and APS violated the Kolley Family's First and Fourteenth Amendment rights by acting pursuant to the allegedly unconstitutional statute M.C.L. §§ 400.11a through 400.11c; and that each of the defendants are liable under 42 U.S.C. § 1983 for unlawful ethnic discrimination.   Plaintiffs invoke this court's supplemental jurisdiction over their remaining state law claims.   28 U.S.C. § 1337.

## C. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is premised "on the negative inference that, if appellate court review of . . . state court judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts." Lawrence v. Welch,

11

531 F.3d 364, 368 (6th Cir. 2008) (citing Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,

544 U.S. 280, 283-84 (2005)).   "In the wake of Exxon, this circuit has 'distinguished

between plaintiffs who bring an impermissible attack on a state court judgment–situations

in which Rooker-Feldman applies–and plaintiffs who assert independent claims before the

district court–situations in which Rooker-Feldman does not apply.'"  Lawrence, 531 F.3d

at 368 (quoting Pittman v. Cuyahoga County Dept. of Children and Family Serv., 241 Fed.

App'x 285, 287 (6th Cir. 2007) (citing McCormick v. Braverman, 451 F.3d 382, 389 (6th Cir.

2006))).  After Exxon, the pertinent inquiry is "'whether the source of the injury' upon which

plaintiff bases his federal claim is the state court judgment[.]"  Lawrence, 531 F.3d at 368

(citing McCormick, 451 F.3d at 394-95).

> . . . . In Exxon, the Supreme Court implicitly repudiated the circuit's post-Feldman use of the phrase "inextricably intertwined" to extent Rooker-Feldman to situations [where] the source of the injury was not the state court judgment.  In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by Rooker-Feldman.

Lawrence, 531 F.3d at 369 (emphasis in original) (quoting McCormick, 451 F.3d at 395).

Plaintiffs allege that detective Neph and others questioned Jena on November 14,

2008, asked invasive and leading questions, took advantage of her mental incompetency,

and convinced Jena to make false allegations of abuse against her mother Suzanne Kolley,

causing Jena to be removed from her home.  Plaintiffs also allege that the false allegations

obtained by Detective Neph and other defendants lead to an unnecessary and

unauthorized rape examination of Jena at Providence Hospital on November 18, 2008.

Assuming without deciding that Detective Neph's alleged acts could support the plaintiffs'

federal claims that their First Amendment and due process rights to associate as a family

were violated when Jena was removed from the home, and that Defendant Neph was

12

motivated in his alleged actions by an ethnic animus, the source of injury upon which the plaintiffs base their injuries in not the Probate Court's Orders or the Circuit Court's Orders, but the independent actions of Detective Neph himself.  <u>Lawrence</u>, 531 F.3d at 368-369. As such, the federal claims as alleged against Detective Neph are not subject to dismissal under the <u>Rooker-Feldman</u> doctrine.

Detective Neph's argument that the federal claims against him are "inextricably intertwined" with the state court decisions is misplaced following <u>Exxon</u>.  <u>Lawrence</u>, 531 F.3d at 369 (quoting <u>McCormick</u>, 451 F.3d at 395); <u>Coles v. Granville</u>, 448 F.3d 853, 859 n.1 (6th Cir. 2006) (finding <u>Exxon</u> makes clear that <u>Peterson Novelties, Inc. v. City of Berkley</u>, 305 F.3d 386 (6th Cir. 2002) was incorrectly decided)).   Under analogous circumstances, a panel of the Sixth Circuit held that a biological father's § 1983 claims, that the Cuyahoga County Department of Children and Family Services violated his Fourteenth Amendment due process rights and liberty interest in family relations by acting wantonly and recklessly during state custody proceedings, were not barred by the <u>Rooker-Feldman</u> doctrine.  <u>Pittman</u>, 241 Fed. App'x at 287-290.  As there, plaintiffs challenge Detective Neph's alleged improper conduct, not a state court judgment or order.  <u>Id</u>. at 289.  Plaintiffs have met their burden of demonstrating that this court is not deprived of federal question jurisdiction over their federal claims as alleged against Detective Neph under the <u>Rooker-Feldman</u> doctrine.  <u>Ashley</u>, 37 F.Supp.2d at 1029.

### D. <u>Younger</u> Abstention

The prerequisites for applying the <u>Younger</u> abstention doctrine were succinctly set forth in <u>Carroll v. City of Mount Clemens</u>, 139 F.3d 1072 (6th Cir. 1998):

> <u>Younger</u> abstention applies when [a] state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff

> an adequate opportunity to raise constitutional claims. <u>Middlesex County</u>
> <u>Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432, 102 S.Ct. 2515,
> 2521, 73 L.Ed.2d 116 (1982);   <u>Kelm v. Hyatt</u>, 44 F.3d 415, 419 (6th
> Cir.1995); <u>Nilsson v. Ruppert, Bronson & Chicarelli Co.</u>, 888 F.2d 452, 454
> (6th Cir.1989).   Although <u>Younger</u> arose in the context of a state criminal
> proceeding, the Supreme Court has extended its principles to civil
> enforcement actions . . . . <u>Trainor v. Hernandez</u>, 431 U.S. 434, 444, 97 S.Ct.
> 1911, 1918, 52 L.Ed.2d 486 (1977) (state civil fraud proceeding to recover
> improper benefits by state welfare department); <u>Huffman v. Pursue, Ltd.</u>, 420
> U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975) (state civil
> nuisance action against adult theater by local sheriff and prosecutor).
> Moreover, the federal plaintiff does not have to seek injunctive relief against
> an ongoing state proceeding for a federal court to abstain.   <u>Younger</u>
> abstention also applies in federal declaratory judgment actions because they
> involve "precisely the same interference with and disruption of state
> proceedings" as an injunction. <u>Samuels v. Mackell</u>, 401 U.S. 66, 72, 91 S.Ct.
> 764, 767, 27 L.Ed.2d 688 (1971).

<u>Carroll</u>, 139 F.3d at 1074.  <u>Younger</u> abstention may also be applied where the plaintiff

seeks declaratory relief and damages.  <u>Id</u>. at 1075 (finding the plaintiff's "federal actions for

damages under 42 U.S.C. § 1983 and the Fair Housing Act is a textbook case for <u>Younger</u>

abstention.").

Probate and criminal proceedings were pending in state court at the time plaintiffs

filed their complaint, and remain pending in Oakland County Probate Court and Oakland

County Circuit Court. <u>Zalman</u>, 802 F.2d at 203.  State proceedings involving the temporary

removal of a child in a child-abuse context are quasi-criminal in nature, and involve an

important state interest.   <u>Moore v. Sims</u>, 442 U.S. 415, 423 (1979) (citing <u>Huffman v.</u>

<u>Pursue</u>, 420 U.S. 592, 604 (1975), and applying <u>Younger</u> abstention in deference to

pending state proceedings in which three minor children were removed from their parents'

home by the Texas Department of Human Services).   State criminal proceedings

traditionally implicate an important state interest. <u>Leveye v. Metropolitan Public Defender's</u>

<u>Office</u>, 73 Fed. App'x 792, 794 (6th Cir. 2003) (citing <u>Younger</u>, 401 U.S. at 43-45).  The

14

probate and criminal proceedings pending in Oakland County Probate Court and Oakland County Circuit Court both involve important state interests.  Id.; Moore, 442 U.S. at 423. "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" Watts v. Burkhart, 854 F.2d 839, 845 (6th Cir. 1988) (quoting Middlesex, 457 U.S. at 432 (internal quotation omitted)).  The question is whether the plaintiffs' constitutional "challenge[s] may be raised in the pending state proceedings subject to conventional limits on justiciability." Moore, 442 U.S. at 423.

Plaintiffs' claims that each of the defendants violated their First Amendment familial rights by removing Jena from her home on November 14, 2008, plaintiffs Suzanne Kolley's, Joseph Kolley's, and George Brown's claims that the Michigan DHS, Michigan APS, APS's Fincher, the MORC defendants, and Detective Neph violated their parental liberty interests by removing Jena from their homes without due process of law, plaintiffs' claims that the Michigan DHS and Michigan APS violated their First and Fourteenth Amendment rights by acting pursuant to the allegedly unconstitutional M.C.L. §§ 400.11a through 400.11c, and plaintiffs' claims that the defendants were each motivated by unlawful discriminatory animus in violation of 42 U.S.C. § 1983, constitute federal constitutional and statutory challenges that may be raised in the guardianship proceedings pending in the Oakland County Probate Court, and in the criminal proceedings pending against plaintiff Suzanne Kolley in the Oakland County Circuit Court. Watts, 854 F.2d at 845; Moore, 442 U.S. at 423.

Plaintiff Suzanne Kolley's argument that she cannot challenge the constitutionality of M.C.L. §§ 400.11a through 400.11c in her criminal proceeding is conclusory, and ignores the availability of the constitutional and statutory challenges in the guardianship

proceedings pending before the Oakland County Probate Court.  M.C.L. § 400.11a involves the state-mandated reporting of adult abuse by a person "employed, licensed, registered, or certified to provide health care, educational, social welfare, mental health, or other human services; an employee of an agency licensed to provide health care, educational, social welfare, mental health, or other human services; a law enforcement officer; or an employee of the office of the county medical examiner who suspects or has reasonable cause to believe that an adult has been abused, neglected, or exploited[.]"  M.C.L. § 400.11a(1).  M.C.L. § 400.11b requires the county DHS agency to commence an investigation within 24 hours of receiving a report that an adult has been abused, neglected, or exploited.  M.C.L. § 400.11b(1).  A person found to have acted in good faith is "immune from civil liability which might otherwise be incurred by making the report or by assisting in making the report."  M.C.L. § 400.11c(1).  As plaintiffs concede: "The present civil case focuses on the process and procedure that lead up to the taking of Jena Kolley." Plaintiffs' Response Brief, at 17.  Plaintiffs' argument that it would be "illogical and irrelevant" to raise their constitutional claims in the Probate Court is not well taken in that plaintiffs have not shown that the Probate Court or the Circuit Court lack the judicial authority to restore the status quo on constitutional grounds.  Watts, 854 F.2d at 845; Moore, 442 U.S. at 423.

This case is analogous to Lake v. Granholm, No. 1:07cv572, 2008 WL 724162 (W.D. Mich. March 17, 2008), in which the federal district court abstained under the Younger doctrine from exercising federal jurisdiction over a parent's claims that the Michigan DHS, social workers, police, and court employees unlawfully removed her daughters from her home in violation of the First, Fourth, and Fourteenth Amendments, that the defendants

acted under the allegedly unconstitutional statute M.C.L. § 722.628(8)[5], that the defendants acted under unconstitutional statutes and protocols, and that the defendants were liable under various state law claims of invasion of privacy, intentional infliction of emotional distress, negligence, and violations of the Michigan Constitution.  Id. at *1-3, *7-8.  The Lake plaintiff sought money damages, declaratory relief that M.C.L. § 722.628(8) and other statutes and protocols were unconstitutional, and injunctive relief prohibiting enforcement of the first two sentences of M.C.L. § 722.628(8).  Id. at *2.  The district court found that the Lake plaintiff's pending criminal proceeding and a proceeding seeking to terminate her parental rights afforded her the opportunity to raise her constitutional claims in state court. Id. at *7-8.  The instant plaintiffs have the same opportunity available to them in the Oakland County Probate Court, and with respect to Suzanne Kolley, this opportunity also extends to the criminal proceedings pending against her in the Oakland County Circuit Court.  See also Moore, 442 U.S. at 425-26, 433 (recognizing that "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims," and reasoning that "[w]e are unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation.").

Plaintiffs' reliance on this court's limitations under the Colorado River [6] abstention doctrine is misplaced.  The Colorado River doctrine applies on finding that "concurrent state

---

[5]   M.C.L. § 722.628 requires that "a school or other institution shall cooperate with the [Michigan DHS] during an investigation of a report of child abuse or neglect. Cooperation includes allowing access to the child without parental consent if access is determined by the department to be necessary to complete the investigation or to prevent abuse or neglect of the child.  . . . ."

[6]   Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

and federal actions are actually parallel." Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998). Defendant Neph does not invoke the Colorado River doctrine, and this court does not apply the Colorado River doctrine. The Supreme Court has recognized that, although "federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them," Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (quoting Colorado River, 424 U.S. at 821), "this duty is not absolute." Quackenbush, 517 U.S. at 716 (citing Younger and Huffman, supra). When applying the Younger doctrine, a district court should abstain from exercising federal jurisdiction only if "extraordinary circumstances" render the state court unable to "fairly and fully" address the federal constitutional issues. Moore, 442 U.S. at 432, 433 (quoting Kugler v. Helfant, 421 U.S. 117, 124-25 (1975)). Plaintiffs have not asserted extraordinary circumstances which render the Oakland County Probate Court and Oakland County Circuit Court unable to address the federal constitutional challenges raised here.

It is apparent to this court that Younger abstention applies to the plaintiffs' federal claims as alleged against *each* defendant. Ashley, 37 F.Supp.2d at 1029; Sweeton, 27 F.3d at 1169; Ku, 322 F.3rd at 433. A district court deciding to abstain under Younger has the option of either dismissing the case without prejudice or holding the case in abeyance." Eidson v. State of Tennessee Dept. of Children's Services, 510 F.3d 631, 638 (6th Cir. 2007) (quoting Coles, 448 F.3d at 866). Given the plaintiffs' opportunities to raise their constitutional challenges in the ongoing state court proceedings, the court finds it is more appropriate to dismiss the plaintiffs' federal claims without prejudice, and to dismiss plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3) on declining to exercise supplemental jurisdiction. With the dismissal of the plaintiffs' federal and state law claims

without prejudice, defendant Saltzman's pending motion to dismiss on the merits (# 18), the MORC defendants' motion to dismiss on the merits (# 34), and defendants Michigan DHS's and Fincher's motion to dismiss on the merits and under the <u>Younger</u> doctrine (# 35) will be denied as moot.

### IV. Conclusion

For the reasons set forth above, defendant Neph's motion to dismiss is hereby GRANTED pursuant to the <u>Younger</u> doctrine. Plaintiffs's federal claims as alleged in Counts I through IV are hereby DISMISSED, without prejudice, as alleged against all defendants, in their entirety. Plaintiffs' state law claims are hereby DISMISSED, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). Defendant Saltzman's motion to dismiss, the MORC defendants' motion to dismiss, and DHS's and Fincher's motion to dismiss are hereby DENIED as MOOT.

SO ORDERED.

Dated:  October 16, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 16, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---